# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MEGAN VOEKS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-715 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **Jury Trial Demanded** |
| MIDLAND CREDIT MANAGEMENT, INC., | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

6.      MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.      Upon information and belief, MCM does not, itself, purchase or take assignment of consumer debts. Instead, its affiliated entity, Midland Funding, LLC ("Midland Funding"), is the owner of all or virtually all U.S. consumer credit card accounts that MCM collects.

8.      Midland Funding is a limited liability company with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108. Midland Funding and MCM are both subsidiaries of Encore Capital Group, Inc. ("Encore").

9.      Midland Funding's website contains an "FAQ" webpage, which states:

> **Who is Midland Funding?**
>
> Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:
>
> - An account has gone at least 180 days without making a payment, or
> - Someone paid less than the minimum monthly payment for at least 180 days, and
> - The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

10.     Midland Funding holds, but does not service, accounts assigned to Midland Funding. Instead, MCM services those accounts. *See Gray v. Suttell & Assocs.*, 181 Wash. 2d 329, 334, 334 P.3d 14, 16 (2014):

> Midland Funding purchases defaulted receivables, i.e., consumers' unpaid financial commitments to credit originators such as banks, credit unions, consumer finance companies, commercial retailers, auto finance companies, and telecommunication companies. Midland Funding has no employees and is merely a holding company for the delinquent accounts it purchases.
>
> Midland Credit Management (MCM) services the defaulted accounts on behalf of Midland Funding. Pursuant to the "Servicing Agreement," MCM decides how to collect on the defaulted accounts purchased by Midland Funding. MCM's employees manage the collection process and perform the collection acts for these defaulted accounts.

2

11. MCM's website also indicates that MCM only services debts that are actually held by affiliates including Midland Funding:

> Customers often ask why Midland Credit Management is servicing their debt rather than the original lender. When a lender does not receive payment on an account for a specific amount of time, they may decide to close your account and turn it over to collections. Many lenders sell the right to collect on your account to companies like Midland Funding LLC or one of MCM's affiliate companies. When this happens, MCM, which specializes in servicing these types of outstanding debt obligations, will begin servicing your account. MCM enjoys long-standing relationships with major financial institutions and retailers across the country, and we have earned their trust by helping people like you settle outstanding debt obligations.

https://www.midlandcreditonline.com/who-is-mcm/ (visited April 23, 2019).

12. MCM and Midland Funding are part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for Midland Funding's parent company, Encore, states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

13. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland Funding paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

14. Neither Midland Funding nor any of its affiliates purchase defaulted consumer debts with the purpose of selling them at a profit. *See, e.g.*, https://www.midlandcreditonline.com/wp-content/uploads/2015/08/Consumer-Bill-of-Rights.pdf (last accessed: February 25, 2019) ("We do not resell accounts to third parties in the ordinary course of our business.").

3

15. MCM is engaged in the business of collecting debts owed to others (i.e. Midland Funding, and not itself) and incurred for personal, family or household purposes.

16. MCM is a debt collector as defined in 15 U.S.C. § 1692a.

17. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

18. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019); *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

19. The primary purpose of MCM's business, and MCM's principal purpose, is the collection of consumer debts. *See Barbato*, 916 F.3d at 267-68.

**FACTS**

20. On or about January 23, 2019, MCM mailed a debt collection letter to Plaintiff regarding an alleged debt, purportedly owed to "Midland Credit Management, Inc." and

4

originally owed to "SYNCHRONY BANK." A copy of this letter is attached to this complaint as Exhibit A.

21. Upon information and belief, the alleged debt referenced in Exhibit A was actually owned or held by Midland Funding, not MCM, at all times relevant to this action.

22. Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a "Blain's Farm & Fleet" store-branded credit card, opened and used only for personal, family, or household purposes.

23. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

24. Upon information and belief, Exhibit A was the first written communication Plaintiff received from MCM regarding the alleged debt referenced in Exhibit A.

25. The reverse side of Exhibit A contains a statement that largely reflects the validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide along with, or within five days of, their initial communications:

> Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

26. On or about February 5, 2019, MCM mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

27. Upon information and belief, Exhibit B is a form letter, generated by computer, with the information specific to Plaintiff inserted by computer.

28. Upon information and belief, Exhibit B is a form debt collection letter, used by MCM to attempt to collect alleged debts.

5

29. <u>Exhibit B</u> contains the following text:

> Send disputes or an instrument tendered as full satisfaction of a debt to:
> Attn: Consumer Support Services
> 2365 Northside Drive
> Suite 300
> San Diego, CA 92108
> You may also call: 877-654-1129

30. <u>Exhibit B</u> also states:

> Dear Megan,
>
> Midland Credit Management, Inc. wants to work with you to resolve the above-referenced account. This letter is to inform you that MCM is considering forwarding this account to an attorney in your state for possible litigation. Please respond by calling **877-654-1129** no later than **2/20/2019**.
>
> …
>
> The opportunity to pay the amount listed above does not alter or amend your validation rights as described in our previous letter to you. Please contact our office at **877-654-1129** by **2/20/2019** to take advantage of the above. Once you have completely fulfilled your payment arrangement, you will be released of the obligation. We are not obligated to renew this offer.
>
> Thank you for your cooperation in resolving this matter. Upon receipt of this notice, please call no later than **2/20/2019**.

31. <u>Exhibit B</u> is deceptive, misleading, and confusing to the unsophisticated consumer.

32. 15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
…
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

33. To trigger verification rights, the debtor must provide the debt collector with written notification that there is a dispute. 15 U.S.C. § 1692g(a)(4); *see also McCabe*, 272 F.

6

Supp. 2d at 743 ("If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.") (citing *Fasten v. Zager*, 49 F. Supp. 2d 144, 149 (E.D.N.Y. May 20, 1999)).

34. Upon receiving a *written* dispute from the consumer within the 30-day debt validation period, the FDCPA requires the debt collector obtain verification of the debt before conducting any further collection efforts. 15 U.S.C. § 1692g(b) (emphasis added):

> **(b) Disputed debts**
> If the consumer notifies the debt collector **in writing** within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

35. Congress adopted a specific FDCPA dispute procedure in 15 U.S.C. § 1692g "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Majeski v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 1830, at *22 n.6 (quoting *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

36. The instruction in <u>Exhibit B</u> that the consumer should "respond by calling 1-877-654-1129," to communicate disputes is false, deceptive, misleading, and confusing to the unsophisticated consumer because it contradicts, overshadows, and confuses the debt validation

notice, and encourages the consumer to forego her verification rights by communicating disputes orally rather than in writing. *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 757-58 (6th Cir. 2018):

> GC's letters present a risk of harm to the FDCPA's goal of ensuring that consumers are free from deceptive debt-collection practices because the letters provide misleading information about the manner in which the consumer can exercise the consumer's statutory right to obtain verification of the debt or information regarding the original creditor. In responding to a debt-collection notice, an oral inquiry or dispute of a debt's validity has different legal consequences than a written one. If a consumer contests a debt by telephone rather than in writing, the consumer loses most of the protections for debtors set forth in Section 1692g; the debt-collection agency is under no obligation to verify the debt and to cease all collection efforts as required by §1692g(b).

(internal citation omitted); *see Macy v. GC Servs. Ltd. P'ship.*, Civil Action No. 3:15-cv-819-DJH, 2016 U.S. Dist. LEXIS 134421 *14-15 (W.D. Ky. Sep. 29, 2016); *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844-45 (E.D. Va. 2011).

37. The unsophisticated consumer would understand the statement that, "You may also call [a toll-free number] to obtain information about the account or dispute the debt or any portion thereof" to mean that disputes communicated orally are equivalent to disputes communicated in writing, when, in fact the consumer needs to provide written notification of his dispute to require the debt collector to provide verification of the debt, and cease collection pending verification. 15 U.S.C. § 1692g(a)(4); *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt."); *see also Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1273-74 (11th Cir. 2016).

38. The instruction to call Defendant has the practical effect of discouraging individuals from submitting written disputes. Consumers who read the language would believe that a debtor who disputes her debt orally is entitled to the same protections as if she had communicated her dispute in writing, when she is not so entitled. *See Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005). Contacting another party by telephone is also faster and easier than contacting the same party in writing.

39. Courts throughout the country have found that a debt collector overshadows the consumer's statutory validation rights by directing them to dispute their debts by telephone. *See Osborn v. Ekpsz, LLC*, 821 F.Supp.2d 859, 868, 870 (S.D. Tex. Sept. 26, 2011) (collecting cases and concluding that "[e]very district court to consider the issue has held that a debt collector violates §1692g(a) by failing to inform consumers that requests under subsections(a)(4) and (a)(5) must be made in writing."); *McCabe*, 272 F. Supp. 2d at 743-44 (omitting the words "in writing" from the validation notice conflicted with and overshadowed the consumer's statutory right to trigger verification); *Chandler v. Eichel*, 2017 U.S. Dist. LEXIS 156168, at *9 (S.D. Ind. Sept. 25, 2017); *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 998 (E.D. Wis. July 9, 2013); *Bicking*, 783 F. Supp. 2d at 845 (E.D. Va. May 5, 2011); *Welker v. Law Office of Daniel J. Horowitz*, 699 F. Supp. 2d 1164, 1170 (S.D. Cal. 2010); *Beasley v. Sessoms & Rogers, P.A.*, 2010 U.S. Dist. LEXIS 52010 (E.D. N.C. Mar. 1, 2010); *Nero v. Law Office of Sam Streeter, P.L.L.C.*, 655 F.Supp.2d 200, 206 (E.D.N.Y. Sept. 10, 2009); *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353, at *16 (N.D. Cal. Mar. 24, 2006); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F.Supp.2d 336, 340 (E.D.N.Y. Aug. 19, 2002); *Carroll v. United Compucred Collections*, 2002 U.S. Dist. LEXIS 25032, at *28 (M.D. Tenn. Nov. 15 2002); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. Oct. 2, 1990); *Caprio

9

*v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 151-152 (3d Cir. 2013); *Rhoades v. West Virginia Credit Bureau Reporting Servs.*, 96 F. Supp. 2d 528, (S.D. W. Va. May 10, 2000); *O'Chaney v. Shapiro & Kreisman, LLC*, U.S. Dist. LEXIS 5116, at *12-13 (Mar. 25, 2004); *Flowers v. Accelerated Bureau of Collections*, 1997 U.S. Dist. LEXIS 3354, at *18-19 (N.D. Ill. Mar. 13, 1997).

40. MCM also magnified the overshadowing effect of the instruction to call in several respects.

41. First, the instruction to call MCM with disputes appears in a follow-up letter, mailed to Plaintiff within the 30-day validation period that commenced with receipt of the *initial* letter – Exhibit A. *See Beaufrand v. Portfolio Recovery Assocs., LLC*, No. 18-CV-214, 2018 U.S. Dist. LEXIS 197339 *13-14 (E.D. Wis. Nov. 20, 2018) (emphasis added):

> The first letter from PRA contained a validation notice that accurately set forth the requirement that the plaintiff must dispute the debt in writing to obtain verification. Several days later, PRA sent a letter purporting to collect the same debt but with no validation notice, simply an instruction on the back that said, "DISPUTES: Call …. or write." At that point, the unsophisticated consumer likely does not remember the details of the first letter he received, including its instruction to submit disputes in writing to trigger verification. Thus, the second notice might lead an unsophisticated consumer to dispute the debt by telephone instead of in writing, thereby forfeiting the statutory right to validate the debt and compel PRA to cease collection activities.

*See also, e.g.*, *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000) ("to authorize debt collectors to comply orally would be just an invitation to the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.").

10

42. Second, while the follow-up letter obliquely references the initial letter, that language is immediately followed by an instruction to call MCM:

> The opportunity to pay the amount listed above does not alter or amend your validation rights as described in our previous letter to you. Please contact our office at **877-654-1129** by **2/20/2019** to take advantage of the above. Once you have completely fulfilled your payment arrangement, you will be released of the obligation. We are not obligated to renew this offer.

43. Even if the unsophisticated consumer would understand that there were "validation rights" in MCM's previous letter, the unsophisticated consumer would not remember that she must exercise those rights by submitting a dispute in writing. *Beaufrand*, 2018 U.S. Dist. LEXIS 197339 *13-14.

44. Third, the instruction to call MCM with disputes appears in the same letter as a threat to refer Plaintiff's account for legal action. Exhibit B.

45. Exhibit B threatens to "forward[] this account to an attorney," and further tells the consumer in two separate places to *call* MCM "no later than 2/20/19:"

> Midland Credit Management, Inc. wants to work with you to resolve the above-referenced account. This letter is to inform you that MCM is considering forwarding this account to an attorney in your state for possible litigation. Please respond by calling **877-654-1129** no later than **2/20/2019**.
>
> …
>
> Thank you for your cooperation in resolving this matter. Upon receipt of this notice, please call no later than **2/20/2019**.

46. Moreover, the deadline for contact in Exhibit B, February 20, 2019 is within the 30-day validation period. Exhibit A was mailed on January 23, 2019. Assuming Plaintiff received Exhibit A three days later, the validation period would not end until February 25, 2019.

47. Moreover, the February 20, 2019 deadline for contact in Exhibit B conflicts with Exhibit A's exhortation to "Reply by 3/10/19."

48. The threat of legal action if the consumer does not respond by a date within the validation period, and which has been shortened from the deadline in the initial letter, contradicts the statutory disclosure that the consumer has thirty days to dispute the debt, and further pressures the consumer to communicate disputes by telephone rather than in writing. Consumers

11

know they have contacted a representative of MCM if they speak with them on the telephone, whereas the consumer cannot confirm that MCM has received a letter at all unless the consumer pays a premium for mail with a tracking service.

49. The unsophisticated consumer would understand <u>Exhibit B</u> as demanding that the consumer contact MCM or pay the debt on or before February 20, 2019—several days before the validation period actually closed—is materially confusing and misleading. *See*, *e.g.*, *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012):

> In analyzing whether a letter, on its face, contravenes Section 1692g(b), this Court has distinguished between language rushing the debtor to take action—to "act now"—and provisions **that set deadlines contrary or contradictory to the thirty-day validation period.** *Compare Taylor*, 365 F.3d at 575 (upholding as not confusing a dunning letter instructing the recipient to "[a]ct now to satisfy this debt"), *with Bartlett v. Heibl*, 128 F.3d 497, 499, 502 (7th Cir. 1997) (rejecting as confusing a letter that contained notice of the thirty-day validation period, but also demanded that the debtor pay $316 toward his debt or call the creditor within a week to avoid legal action)[.]

50. Coupled with the reference to potential legal action, the demand in <u>Exhibit B</u> that the consumer call during the validation period effectively shortens the validation period, and pressures consumers to call rather than write with disputes, thereby forfeiting their validation rights under 15 U.S.C. § 1692g(b).

51. Further, the Seventh Circuit has explained that a follow-up letter mailed during the validation period violates the FDCPA if it "misrepresent[s] or cloud[s] the amount of time remaining to dispute the debt." *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 417 (7th Cir. 2005).

52. The representation in <u>Exhibit B</u> that "[t]he opportunity to pay the amount listed above does not alter or amend your validation rights as described in our previous letter," which is immediately followed by the instruction to "contact our office at **877-654-1129** by **2/20/2019** to

12

take advantage of the above" misrepresents the amount of time that the consumer has to dispute the debt.

53. Plaintiff was confused and misled by Exhibits A & B.

54. The unsophisticated consumer would be confused and misled by Exhibits A & B.

### ***The FDCPA***

55. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F.

13

Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

14

57. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

58. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

59. 15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692g states:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

. . .

(4) a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's **written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(emphasis added)

61. 15 U.S.C. § 1692g(b) states, in part, that "collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

62. The Seventh Circuit has held that a debt collector must disclose the debtor's rights to obtain verification in a non-confusing manner, and must ensure its representations to debtors do not contradict the validation notice. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("the

15

debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.").

63. The false statement or implication during the thirty-day validation period that a consumer may effectively communicate her dispute by telephone is a material false statement. *E.g., Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 U.S. Dist. LEXIS 6070, *7-9 (N.D. Ill. Apr. 29, 1997).

## COUNT I – FDCPA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. By representing that the consumer may effectively communicate their dispute by telephone, Exhibits A & B contradict and overshadow the disclosure of the consumer's rights to obtain verification of the debt and the name and address of the original creditor.

66. Exhibits A & B mislead the consumer to believe he may effectively communicate a dispute by telephone rather than in writing.

67. Exhibit B further pressures consumers into calling with disputes by threatening legal action and by requesting the consumer call with disputes in a follow-up letter within the validation period. *Beaufrand*, 2018 U.S. Dist. LEXIS 197339 *13-14.

68. Exhibit B misrepresents the amount of time remaining in the validation period. *Durkin*, 406 F.3d at 417.

69. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, 1692g(a)(3), 1692g(a)(4), 1692g(a)(5), and 1692g(b).

16

## CLASS ALLEGATIONS

70. Plaintiff brings this action on behalf of a Class, consisting of:

    (a) all natural persons in the United States of America (b) to whom Defendants mailed a debt collection letter in the form of Exhibit A to the complaint in this action, (c) and within the next thirty days mailed a debt collection letter regarding the same debt in the form of Exhibit B to the complaint in this action (d) instructing the consumer to "respond by calling . . . no later than [less than thirty days after the date of the first letter]" (e) where such debt was incurred for personal, family, or household services, (f) and the letter in the form of Exhibit B was mailed between May 14, 2018 and May 14, 2019, inclusive, (g) and neither letter was returned by the postal service.

71. Plaintiff also brings this action on behalf of a subclass, consisting of:

    (a) all natural persons in the State of Wisconsin (b) to whom Defendants mailed a debt collection letter in the form of Exhibit A to the complaint in this action, (c) and within the next thirty days mailed a debt collection letter regarding the same debt in the form of Exhibit B to the complaint in this action (d) instructing the consumer to "respond by calling . . . no later than [less than thirty days after the date of the first letter]" (e) where such debt was incurred for personal, family, or household services, (f) and the letter in the form of Exhibit B was mailed between May 14, 2018 and May 14, 2019, inclusive, (g) and neither letter was returned by the postal service.

72. Each Class is so numerous that joinder is impracticable.

73. Upon information and belief, there are more than 50 members of each Class.

74. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

75. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

76. Plaintiff's will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

77. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

78. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: May 14, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com